IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| TERRELL HARRIS,          ) | |
|     Petitioner,    ) | |
|                          ) | |
| v.                       ) | CIVIL ACTION NO. 5:02-1444 |
|                          ) | |
| TROY WILLIAMSON, Warden, ) | |
| FCI Beckley,             ) | |
|     Respondent.    ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On December 16, 2002, Petitioner, then an inmate at FCI Beckley, Beaver, West Virginia,[1] and acting *pro se,* filed his Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody.[2] (Doc. No. 1.) Petitioner challenges certain aspects of his May 10, 2002, disciplinary hearing and his subsequent detention in segregation at FCI Englewood, Englewood, Colorado. (Id.) By Standing Order also filed on December 16, 2002, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 3.)

**PROCEDURE AND FACTS**

On January 24, 2002, Lieutenant Kenneth White, FCI Englewood, was advised by a

---

[1] The Federal Bureau of Prisons' Inmate Locator indicates that Petitioner is presently incarcerated at FCI Elkton, Post Office Box 10, Lisbon, Ohio 44432. Petitioner is serving consecutive terms of imprisonment of 70 months for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a), and 60 months for unlawful use of firearms during a drug trafficking offense in violation of 18 U.S.C. § 924(c). (Doc. No. 10, Exhibit A, Declaration of Russ Tabor, ¶ 6.)

[2] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore, are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

confidential informant that Petitioner possessed narcotic substances. (Doc. No. 10, Exhibit B, Declaration of Kenneth White at ¶ 3.) Based upon the informant's tip, Lieutenant White requested and received permission from the Warden at FCI Englewood to transfer Petitioner from the Special Housing Unit at FCI Englewood, where he was being housed on suspicion that he was introducing contraband through the visiting room, to a dry cell at FDC Englewood for observation. (Id. at ¶¶ 3-4.) On January 24, 2002, in preparation of the transfer, Petitioner was visually strip searched by Officers Peter Rutsay, James Skaggs, and Jay O'Neil. (Doc. No. 10, Exhibits C-E, Declarations.) None of the officers observed any contraband on Petitioner. (Id.) Officer James Skaggs also searched Petitioner's clothes and shoes and found no contraband. (Doc. No. 10, Exhibit B, Declaration of James Skaggs at ¶ 4.) Petitioner's clothes and shoes were returned to him. (Id.) After watching Petitioner get dressed, Officer Rutsay placed Petitioner in restraints and escorted him to the van. (Id. and Exhibit C, Declaration of Peter Rutsay at ¶ 4.) Lieutenant David Froisness searched the van prior to placing Petitioner in the second seat of the van. (Doc. No. 10, Exhibit F, Declaration of David Froisness at ¶ 3.) Upon arriving at FDC Englewood, Petitioner was delayed in his transport because Food Service was in the dock. (Id. at 4.) To clear the area of the delay, Officers O'Niel and Froisness left Petitioner alone in the van for approximately two minutes. (Id.) Officer O'Niel then transported Petitioner inside FDC Englewood and Officer Froisness lagged behind to search the van. (Id.) Officer Froisness found underneath the second seat of the van where Petitioner sat, two packages of a green leafy substance, which tested positive for marijuana. (Id. at 5.) Petitioner was placed in the Special Housing Unit [SHU]. (Doc. No. 10 at 3.)

      On January 24, 2002, Officer Froisness prepared an Incident Report charging Petitioner with

Possession of Narcotics in violation of Federal Bureau of Prisons [BOP] prohibited act code 113.[3] (Doc. No. 10, Exhibit A, Attachment A at 7-8.) Petitioner received a copy of the Incident Report on January 25, 2002. (Id. at 7.) On April 4, 2002, during the investigation of the charge, Petitioner was "read his rights and indicated he understood them. He elected not to make a statement." (Id. at 8.) Based upon the seriousness of the charge, the Unit Disciplinary Committee [UDC] referred the matter to the Discipline Hearing Officer [DHO] on April 8, 2002. (Id. at 7.) On April 8, 2002, Petitioner was again advised of his rights before the DHO and waived his right to a staff representative. (Id., Attachment A at 5-6.)

Petitioner appeared before the DHO on May 10, 2002. (Doc. No. 10, Exhibit A, Attachment A at 1-4.) During the hearing, Petitioner denied the charge and made the following statement:

> I wasn't in possession of any controlled substance at any time. I was stripped searched by three officers and two lieutenants. They gave me all new underwear, t-shirt, and jumpsuit, and they then cuffed me and took me to the dry cell. When we got in the van the[y] put me in the seat belt. If I was doing the drugs something would have come up in the dry cell or the UA's . . . They gave me new clothes. Even if they did give me my clothes back where would you hide two balloons of marijuana. I've been staying clean to get a camp transfer, I even stopped getting involved in little stuff.

(Id. at 1.) Petitioner did not present any documentary evidence, but called Officers Rutsay, Skaggs,

---

[3] The details of the charge are described in the Incident Report as follows:

On 1/24/02 at 1430 I conducted a search of the escort van in preparation for the transport of inmate Harris #04002-025 from FCI Englewood to FDC Englewood. The inmate was placed in the second seat and the inmate was transported to the FDC. When the inmate was removed from the van I conducted another search of the van and below the second seat where the inmate was seated I found two packages of a green leafy substance. Lieutenant White was notified. The substance was tested using NIK kit #3109E and tested positive for marijuana. Total weight 3 grams.

(Doc. No. 10, Exhibit A, Declaration of Russ Tabor, Attachment A at 7.)

and O'Neil as witnesses. (Id. at 2.) Officers Rutsay and Skaggs testified that they physically searched Petitioner's person and found no contraband. (Id.) Officers Rutsay and O'Neil stated that they could not recall however, whether Petitioner's original clothes were returned to him. (Id.) Officer O'Neil further testified that Petitioner was left alone in the transport van during the delay. (Id.) Petitioner attempted to call Officer Froisness as a witness, but his request was denied pursuant to BOP Program Statement [P.S.] 5270.07. (Doc. No. 10 at 4, n.3) Nevertheless, at the DHO's request, Officer Froisness provided the DHO and Petitioner a further statement that he searched the van prior to Petitioner entering it and found no contraband. (Doc. No. 10, Exhibit A at ¶ 14 and Attachment A at 3.) He further stated that Petitioner was left alone in the van for approximately two minutes while the officers cleared the area. (Id.) After Petitioner was removed from the van, Officer Froisness found two bags, "which looked like they were part of a food service glove," where Petitioner was sitting. (Id.)

Considering the Incident Report, the additional information, and all the testimony, the DHO concluded that although Petitioner denied possessing the contraband, based upon a preponderance of the evidence, Petitioner committed the prohibited act as charged. (Doc. No. 10, Exhibit A, Attachment A at 2-3.) Finding Petitioner's statement that he was given a fresh set of clothes after being searched to be incredible, the DHO stated:

> You cannot provide any logical way that the contraband found its way into the van underneath the seat you were sitting on, other than you placing it there nor can you provide any other verifiable evidence to support your innocence. There were not any other inmates in the back section of the van during this escort.

(Id. at 3.) The DHO sanctioned Petitioner to a 27 day disallowance of good conduct time, a 45 day confinement in disciplinary segregation, and a 180 day restriction of visiting privileges, with credit

for time already restricted. (Id. at 4.)

Petitioner filed his instant Application under 28 U.S.C. § 2241 in this case on December 16, 2002, contending that (1) he was arbitrarily found guilty of possessing narcotics or narcotic paraphernalia without adequate evidence; (2) he was denied due process when the DHO utilized only three of his five summoned witnesses to appear at his DHO hearing; (3) he was denied an adequate appeal of the DHO's decision when the unit team failed to supply him with the appropriate administrative remedy form; and (4) the BOP "violated policy by holding [him] in segregation after the initial 90 days investigation; without getting additional approval from the region." (Id. at 6-8.)

By Order entered on March 21, 2003, the undersigned directed Respondent to show cause, if any, why Petitioner's § 2241 Application should not be granted, to which Respondent filed his Response on April 23, 2003. (Doc. No. 10.) Respondent argues that Petitioner failed to exhaust his administrative remedies prior to filing his § 2241 Application and therefore, his Application must be dismissed. (Id. at 5-9.) Considering the merits of Petitioner's claims, Respondent argues that Petitioner was afforded all the due process protections provided by Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). (Id. at 12-14.) Specifically, Respondent states that Petitioner was provided written notice of the charges against him at least 24 hours prior to his hearing and an opportunity to make a statement, call witnesses, and present documentary evidence in his defense. (Id. at 13.) Although Petitioner requested Officer Froisness to testify, he was properly excluded under P.S. 5270.07 because he was the reporting employee. (Id. at 13-14.) Petitioner has not otherwise identified the witnesses he wished to utilize, or stated how their testimony would have changed the outcome of his hearing, and therefore, does not establish a due process violation. (Id. at 14.)

Respondent further argues that the DHO's decision is supported by "some evidence" of record and should not be overturned. (Id. at 15-16.) Finally, the Respondent argues that Petitioner has not stated a due process violation by his continued placement in administrative detention. (Id. at 16-18.) Respondent states that Petitioner's post-disciplinary detention of approximately 53 days resulted from the Special Investigative Supervisor's investigation, pending a transfer to another institution. (Id. at 17-18.) Accordingly, the Respondent submits that Petitioner's § 2241 Application must be dismissed with prejudice.

Petitioner filed his Reply on March 16, 2004, claiming that he fully exhausted his administrative remedies. (Doc. No. 20.)

## **DISCUSSION**

### 1. The DHO's finding of guilt is supported by the record.

Petitioner contends that the weight of the evidence does not support a finding of guilt, thereby violating his Fifth Amendment right to due process. In Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454-56, 105 S.Ct. 2768, 2773-74, 86 L.Ed.2d 356 (1985), the Supreme Court held that to comport with the requirements of due process, the prison disciplinary hearing board's decision revoking a prisoner's good time credits must be supported by "some evidence in the record." The relevant inquiry is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56, 105 S.Ct. at 2774. The BOP has adopted a slightly higher standard than that established in Hill, requiring the DHO to base his decision on the "greater weight of the evidence" when conflicting evidence is presented. BOP P.S. 5270.07. The phrase "greater weight of the evidence" refers to the merits of the evidence produced, and not to the quantity of witnesses presented. Id. Accordingly, pursuant to BOP

6

regulations, the controlling inquiry is whether the DHO's decision was based on the greater weight of the evidence.

The DHO's report indicates that he specifically based his decision on the reporting staff member's written report and supplemental information as requested, the testimony of Petitioner's three witnesses, and Petitioner's testimony. (Doc. No. 10 at Exhibit A.) The officers testified that prior to Petitioner entering the van, he was visually strip searched and no contraband was found. Although there is some question as to whether he was returned his original clothing, the clothing was searched and likewise, no contraband was discovered. Officer Froisness provided a statement that he then searched the van prior to Petitioner entering it and found no contraband. After Petitioner was removed from the van, Officer Froisness stated that he found two bags which tested positive for marijuana, directly below the seat where Petitioner was sitting. Petitioner denied the incident report and questioned how he could have retrieved two bags of marijuana while wearing a full set of restraints. The DHO acknowledged Petitioner's statements, but found upon a preponderance of the evidence that because (1) both Petitioner's person and the van were searched prior to Petitioner entering the van, (2) there were no other inmates transported in the van with Petitioner, and (3) Petitioner was left alone in the van for two minutes, Petitioner must have placed the contraband in the van. Petitioner failed to provide any other verifiable information to refute the charge. Based on the foregoing, the undersigned finds that the DHO's decision is supported by both "some evidence" and the "greater weight of the evidence," and was not rendered in an arbitrarily or capricious manner.

    **2.**    **Petitioner was not denied his Fifth Amendment right to due process of law**.

Although the Fifth Amendment of the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law", the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for the period of incarceration. See U.S. Const. amend. V; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction and imprisonment implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id., 515 U.S. at 484, 115 S.Ct. at 2300 (Citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life []", the inmate's claims have no merit. Id.

Petitioner contends that he was denied due process when the DHO utilized only three of his five requested witnesses. The Supreme Court has determined that to comport with the requirements of due process, prison officials must provide the following procedural safeguards to a prisoner when conducting disciplinary hearings: (1) written notice of the charged violations at least twenty-four

8

hours prior to the prisoner's appearance before the disciplinary official, (2) a written statement by the disciplinary official as to the evidence relied on and the reasons for the disciplinary action, (3) the right to call witnesses and present documentary evidence in the prisoner's defense, (4) non-attorney representation when the prisoner is illiterate or the disciplinary proceeding involves complex issues, and (5) a neutral and detached hearing body. Wolff, 418 U.S. 539, 564-71, 94 S.Ct. 2963, 2979-82, 41 L.Ed.2d 935 (1974); Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972); Segarra v. McDade, 706 F.2d 1301, 1304 (4th Cir. 1983).

The right to present evidence is not unqualified; prison officials possess discretionary authority to exclude evidence that is neither materially relevant, nor exonerating. Wolff, 418 U.S. at 566-67, 94 S.Ct. at 2979-80; see also Piggie v. McBride, 277 F.3d 922, 924 (7th Cir. 2002); Moses v. Bledsoe, 2004 WL 3317657, *3 (N.D. W.Va. Sept. 28, 2004), aff'd, 124 Fed.Appx. 787 (4th Cir. Mar. 29, 2005)(unpublished). The BOP has promulgated regulations providing that "[t]he reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO." 28 C.F.R. § 541.17(c); BOP P.S. 5270.07. In this case, Petitioner attempted to call Officer Froisness, the reporting officer, to testify at his DHO hearing. Pursuant to BOP regulations, the DHO properly excluded the testimony; The officer's knowledge of the incident was adequately summarized in the Incident Report and supplemental information provided on request by the DHO. "[T]he *Wolff* Court specifically stopped short of allowing an inmate to call adverse witnesses in order to subject them to cross-examination." Barry v. Whalen, 796 F.Supp. 885, 895 (E.D. Va. 1992). Petitioner has neither identified the other witness he intended to call, nor shown that the proposed witness testimony would have been exculpatory or materially relevant. Accordingly, the

9

undersigned finds that Petitioner has failed to establish that the DHO denied him the right to call witnesses on his behalf in violation of the Due Process Clause.

**3.  Petitioner does not possess a liberty interest in remaining free of segregation.**

Petitioner contends that the BOP violated its own policy by holding him in segregation beyond the ninety day investigation period. (Doc. No. 1 at 8.) Although Petitioner does not cite any particular policy, Respondent avers that he is referencing BOP P.S. 5270.07 which provides that with respect to post-disciplinary detention, staff must either return the inmate to the general population or transfer the inmate to a more suitable institution, ordinarily within 90 days of placement in detention. (Doc. No. 10 at 16.) Respondent argues, however, that Petitioner has failed to state a claim of constitutional magnitude because prisoners do not have a constitutionally protected liberty interest in placement in general population. (Id. at 18.)

Petitioner's prison records reveal that pursuant to 28 C.F.R. § 541.22(a)(1),[4] he was placed

---

[4] Title 28, C.F.R. §§ 541.22(a)(1) and (6)(i) provide as follows:

(a) The Warden may delegate authority to place an inmate in administrative detention to Lieutenants. Prior to the inmate's placement in administrative detention, the Lieutenant is to review the available information and determine whether the inmate's placement in administrative detention is warranted. The Warden may place an inmate in administrative detention when the inmate is in holdover status (i.e., en route to a designated institution) during transfer, or is a new commitment pending classification. The Warden may also place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, or other inmates or to the security or orderly running of the institution and when the inmate:
   (1) Is pending a hearing for a violation of Bureau regulations;
   * * *
   (6) Is terminating confinement in disciplinary segregation and placement in general population is not prudent. The Segregation Review Official is to advise the inmate of this determination and the reasons for such action.
      (i) Except for pretrial inmates or inmates in a control unit program,

in administrative segregation on January 22, 2002, pending investigation of an incident report. (Doc. No. 10, Exhibit H at 17.) From January 24, 2002, through January 26, 2002, he was temporarily placed in the Receiving and Discharge Unit, and on January 26, he was returned to administrative segregation. (Id. at 18-19.) After his DHO hearing on May 10, 2002, Petitioner was placed in disciplinary segregation in SHU. (Id. at 20.) Upon completion of his term of disciplinary segregation on May 24, 2002, Petitioner was placed back in administrative segregation in SHU, where he remained until July 3, 2002, when he was transferred to the general population. (Id. at 21-22.) From July 12, until July 23, 2002, Petitioner was again placed in administrative detention. (Id. at 23-24.) On July 23, 2002, he was placed in the Jail Unit, pending his transfer to FCI Beckley. (Id. at 24.) Petitioner was transferred from FCI Englewood to FCI Beckley on September 19, 2002.[5] (Id. at 24.)

Based on the foregoing, the undersigned finds that Petitioner spent 41 days in post-disciplinary detention and 12 days in administrative detention prior to his placement in the jail unit pending his transfer. Accordingly, Petitioner has not demonstrated that the BOP violated its own policy with respect to his post-disciplinary detention. Notwithstanding his failure to establish a policy violation, the undersigned further finds that Petitioner does not establish a constitutional violation because he does not possess a protected liberty interest in his placement or classification within the BOP. See Olim v. Wakinekona, 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813

---

staff ordinarily within 90 days of an inmate's placement in post-disciplinary detention shall either return the inmate to the general population or request regional level assistance to effect a transfer to a more suitable institution.

[5] Petitioner arrived at FCI Beckley on October 10, 2002. (Doc. No. 10, Exhibit H, SENTRY records.)

(1983); Meachum v. Fano, 427 U.S. 215, 224-25, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). The Supreme Court has held that an inmate has "no legitimate statutory or constitutional entitlement" to any particular custodial classification which is sufficient to invoke due process even if a change in classification would impose a "grievous loss" on the inmate. Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976). According to the Supreme Court, Congress has given federal prison officials full discretion to control the classification of prisoners residing in their institutions. Id. (*citing* 18 U.S.C. § 4081). Furthermore, pursuant to 18 U.S.C. §3621(b) the Bureau of Prisons has the authority to direct confinement of federal prisoners "in any available facility and may transfer a prisoner from one facility to another at any time." See Prows v. Federal Bureau of Prisons, 981 F.2d 466, 469 n. 3 (10th Cir. 1992), cert. denied, 510 U.S. 830, 114 S.Ct. 98, 126 L.Ed.2d 65 (1993); Barden v. Keohane, 921 F.2d 476, 483 (3d Cir. 1990). Accordingly, Petitioner has failed to establish a violation of his due process rights and his claim must be dismissed.

**4.      Petitioner failed to exhaust his administrative remedies.**

Federal prisoners challenging the execution of their sentence must exhaust administrative remedies prior to seeking *habeas* review under 28 U.S.C. § 2241. See Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Under the BOP's Administrative Remedy Program, 28 C.F.R. §§ 542.10 - 19, a process "through which inmates may seek formal review of an issue which relates to any aspect of their confinement," federal prisoners are required first to informally attempt to resolve their grievances and if unsuccessful, file appeals to the Warden, then to the Regional Director, and finally, to the Office of General Counsel. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's

request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete.

      Petitioner contends that he was unable to exhaust his administrative remedies because he was not provided the requisite forms in a timely manner. (Doc. No. 1 at 7.) Respondent argues that Petitioner did not exhaust his administrative remedies with respect to the DHO's decision because he failed to resubmit his request after it was rejected. (Doc. No. 10 at 7.) On June 21, 2002, Petitioner timely appealed the DHO's decision to the Regional Director. (Doc. No. 10, Declaration of Melinda Clark, Exhibit H at ¶ 6.) On that same day, his appeal was rejected for having exceeded the one page limit for continuation pages and he was given fifteen days to resubmit his appeal. (Id. at ¶ 7.) Petitioner however, never resubmitted the appeal. (Id. at ¶ 8.) On November 24, 2000,

Petitioner apparently initiated the Administrative Remedy process concerning his claim that an officer fabricated evidence in his DHO hearing. (Id., Attachment at 1.) Petitioner failed to pursue this procedure as well. (Id., Attachment at 2-3.) Although Petitioner claims that he was denied the appropriate Administrative Remedy form, he has not produced any evidence demonstrating his inability to submit the same form, less the one excessive page. It appears that Petitioner merely failed to resubmit his appeal to the Regional Director. Accordingly, the undersigned finds that Petitioner failed to exhaust his administrative remedies with respect to the DHO's decision.

Respondent further argues that Petitioner failed to exhaust his administrative remedies concerning his placement in disciplinary segregation. (Doc. No. 10 at 7.) On June 12, 2002, Petitioner filed a Request for Administrative Remedy (BP-9), alleging that he had served his time in disciplinary segregation and requesting that he be removed from segregation. (Doc. No. 10, Exhibit H at ¶ 9.) On July 24, 2002, Petitioner's request was denied by Warden Pratt, FCI Englewood. (Id. at 10.) Warden Pratt advised Petitioner that his placement in the Special Housing Unit [SHU] resulted from "a recent investigation revealing separation concerns, and due to the separation concerns, [Petitioner] would be transferred." (Id.) Petitioner appealed the Warden's response to the Regional Director on August 12, 2002. (Id. at 11.) The Regional Director denied his request on August 14, 2002, because he failed to demonstrate that he had attempted informal resolution of his claims at the institutional level. (Id. at 12.) On September 16, 2002, Petitioner again appealed the Warden's response, which appeal was rejected as untimely filed. (Id. at 13-14.) Petitioner appealed the Regional Director's response to the Central Office on November 12, 2002, which appeal was, too, rejected as untimely on November 15, 2002. (Id. at 15.) Based on the foregoing, it appears that although Petitioner initiated the administrative remedy process with

respect to his detention claims, he failed to execute the process in a timely manner. The undersigned finds that Petitioner's claims must be dismissed for his failure to exhaust all available administrative remedies. Notwithstanding Petitioner's failure to exhaust his administrative remedies, the undersigned has further recommended above that Petitioner's Application be dismissed on the merits.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Petitioner's Application (Doc. No. 1.) with prejudice and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United

States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner.

ENTER: December 8, 2005.

R. Clarke VanDervort
United States Magistrate Judge